NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---------------------------------------------------------
SUMESH NAUL,                                  :
                                              :
         Petitioner,                          :
                                              :         Civil Action No. 05-4627 (JAG)
              v.                              :
                                              :                   **OPINION**
ALBERTO GONZALES,                             :
ATTORNEY GENERAL                              :
OF THE UNITED STATES, et al,                  :
                                              :
         Respondents.                         :
---------------------------------------------------------

**GREENAWAY, JR., DISTRICT JUDGE**

Sumesh Naul ("Petitioner"), a detainee of Immigration and Customs Enforcement ("ICE"), filed a petition ("Petition") seeking the issuance of a writ of habeas corpus, pursuant to 28 U.S.C. § 2241(c)(3), challenging his continued detention pending an appeal of his removal order before the Board of Immigration Appeals ("BIA"). Petitioner claims that he was denied immigration parole improperly, and that his continued detention is a violation of international law and violates his due process rights. As set forth below, this Court concludes that the denial of Petitioner's request for parole, pursuant to 8 U.S.C. § 1182(d)(5), is a decision within the discretion of the Attorney General of the United States, which this Court lacks jurisdiction to review. In addition, this Court finds that international law is not applicable here. Finally, this Court finds that Petitioner has been afforded the due process rights of an alien denied entry, as

1

provided by the parole procedures enumerated in 8 C.F.R. § 241.4. Consequently, this Court shall dismiss the Petition.

**I. FACTUAL BACKGROUND**

Petitioner Sumesh Naul, a native of Guyana, arrived at Miami International Airport on December 16, 2001. (Memorandum for File A79429861, Dec. 16, 2001, attached as Ex. A to Answer and Opp'n to Habeas Corpus Pet., 1.) Upon arrival, Petitioner was questioned and detained by Immigration and Naturalization Service ("INS")[1] authorities, who noticed his false United States passport. The INS officers found Naul to be an inadmissable alien, based on the fraudulent documentation and misrepresentation, under the Immigration and Nationality Act ("INA") sections 212(a)(7)(A)(i)(I) and 212(a)(6)(c), 8 U.S.C. § 1182 (a)(6)(C) and 8 U.S.C. § 1182(a)(7)(A)(i)(I).[2] (Id.)

On December 21, 2001, Petitioner was referred to an INS asylum officer for a credible fear determination. The officer determined that Petitioner's identity and credible fear of persecution had been established, and referred Petitioner's claim to an immigration judge ("IJ") for full consideration. In conjunction with that referral, the INS issued a Notice to Appear, which charged Petitioner with removability, under 8 U.S.C. §1182(a)(6)(c)(ii), as an illegal entrant falsely claiming United States citizenship. (Notice to Appear, Dec. 21, 2001, attached as Ex. B to Answer and Opp'n to Habeas Corpus Pet., 1.)

---

[1] The INS ceased to exist as an independent agency on March 1, 2003. Its functions were transferred to the newly formed Department of Homeland Security ("DHS"). See Homeland Security Act of 2002, 6 U.S.C. §133, Pub. L. No. 107-296, §§ 441, 451, 471, 116 Stat. 2135 (Nov. 25, 2002).

[2] The citations reflected in this opinion shall be in accord with the United States Code rather than the Immigration and Nationality Act.

On August 22, 2002, the IJ found that Petitioner was not credible, and denied Petitioner's claims for asylum and withholding of removal, pursuant to 8 U.S.C. §§ 1158(a), 1231(b)(3).  The IJ also denied Petitioner's request for protection under the Convention Against Torture ("CAT"). (See Op. of the IJ on Remand, attached as Ex.C to Answer and Opp'n to Habeas Corpus Pet., 2.) Petitioner filed a timely notice of appeal with the BIA on September 23, 2002.  On February 27, 2003, the BIA affirmed, without opinion, the decision of the IJ.  (Id.)

Petitioner sought review in the United States Court of Appeals for the Third Circuit, which granted the petition for review of the BIA's decision, and vacated the order of removal in an unreported decision on August 3, 2004.  The Court of Appeals remanded the matter to the BIA with instructions to refer the case to the IJ for further proceedings.  Naul v. Ashcroft, 106 Fed. Appx. 791 (3d Cir. 2004).

On January 20, 2005, upon remand, the IJ entered an opinion denying Petitioner's applications, and ordered him removed to Guyana.  (Op. of the IJ on Remand, attached as Ex.C to Answer and Opp'n to Habeas Corpus Pet., 26.)  On February 11, 2005, Petitioner filed an appeal to the BIA, where the case is currently pending.

Petitioner has been detained since December 16, 2001.  Beginning on March 20, 2002, and continuing throughout his detention, Petitioner has filed several requests for parole. Additional parole requests were filed on March 20, 2003, August 25, 2004, and February 17, 2005, all of which were denied.  On August 25, 2004, Petitioner's request for parole was denied because he failed to show significant ties to the community, and his manner of entry did not demonstrate a likelihood that he would appear for future proceedings, if released.  (Letter from Christopher Shanahan, Officer In Charge, Immigrations and Customs Enforcement, to

Visuvanathan Rudrakumaran, Esq. (Aug. 25, 2004), attached as Ex. E to Answer and Opp'n to Habeas Corpus Pet.)  Petitioner's subsequent request for parole, dated February 17, 2005, was denied by DHS, which found that Petitioner did have community ties but remained a flight risk because of the manner of his attempted illegal entry.  (Deportation Officer Parole Recommendation, attached as Ex. F to Answer and Opp'n to Habeas Corpus Pet.)

## II. DISCUSSION

### A. Attorney General's Decision to Deny Parole

"Inadmissible aliens" include those who have not entered the United States and those who have entered illegally.  8 U.S.C. § 1182(a)(6).  Since Petitioner attempted entry with a false passport and was denied entry by an immigration officer, he is an "inadmissable alien" seeking admission within the meaning of the INA.  Petitioner is currently detained, pursuant to 8 U.S.C. § 1225(b)(2)(A), which states, in relevant part, that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a[3] of this title."  8 U.S.C. § 1225(b)(2)(A).

As an alien detained under 8 U.S.C. § 1225(b), Petitioner may be released from detention by a grant of parole, in accordance with the provisions of 8 U.S.C. § 1182(d)(5)(A).  That section provides that the Attorney General "may in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case by case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States."  8 U.S.C. § 1182(d)(5)(A).  That discretionary power is vested explicitly by statute in the

---

[3] Section 1229a governs the procedures for removal proceedings.

Attorney General.  8 U.S.C. § 1182(d)(5).

Relying on 8 U.S.C. § 1252(a)(2)(B)(ii), Respondent argues that the denial of Petitioner's immigration parole is a discretionary decision beyond this Court's review.  (Answer and Opp'n to Habeas Corpus Pet. 6.)  Section 1252(a)(2)(B)(ii) provides that:

> Notwithstanding any other provision of law . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or Secretary of Homeland Security, other than the granting of relief under section 1158(a)[4] of this title.

This Court's jurisdiction depends on whether the Attorney General's authority to grant Petitioner release on immigration parole is "specified under this subchapter," thus prohibiting this Court's review.  The Third Circuit has held that "'[t]he language 'this subchapter' in the foregoing provision refers to Subchapter II in Chapter 12 of Title 8 of the United States Code,'" which consists of 8 U.S.C. §§ 1151-1378 ("Subchapter").  Khan v. United States Att'y Gen., 448 F.3d 226, 230 (3d Cir. 2006) (quoting Urena-Tavarez v. Ashcroft 367 F.3d 154, 158 (3d Cir. 2004)).  Therefore, the Attorney General's denial of Petitioner's parole requests, pursuant to 8 U.S.C. § 1182(d)(5)(A), is a discretionary decision outside this Court's review.

**B. Role of International Law**

Petitioner argues that, because he is seeking asylum, his detention is a violation of international law.  International law has no bearing on this case.  Although statutes should be "construed in light of international law," Hartford Fire Ins. Co. v. California, 509 U.S. 764, 816-

---

[4] Section 1158(a) governs the procedure for asylum applications.

17 (1993),[5] "United States law is not subordinate to customary international law or necessarily subordinate to treaty-based international law and, in fact, may conflict with both." U.S. v. Yousef, 327 F.3d 56, 91 (2d Cir. 2003), cert. denied, 540 U.S. 933 (2003), cert. denied, 540 U.S. 993 (2003).[6] Therefore, domestic legislation preempts international law in the case when the two conflict.

Petitioner claims that 8 U.S.C. §1182(d)(5) and the Parole Project Memorandum,[7] read in light of international law prohibiting long-term detention of asylum seekers, mandates his parole. This simply is not the case. The Parole Project Memorandum does not contain any directive whatsoever to the Attorney General regarding parole. Rather, it provides guidance to asylum pre-screening interviewers concerning the decision to recommend parole or not.[8] Section 1182(d)(5)

---

[5] See also Lauritzen v. Larson, 345 U.S. 571, 578 (1953) ("'an Act of Congress ought never be construed to violate the law of nations if any other possible construction remains'" (quoting Murray v. The Charming Betsy, 6 U.S. (2 Cranch) 64, 118 (1804)).

[6] Yousef involved multiple defendants, two of whom filed separate petitions for writs of certiorari, which were denied on separate occasions.

[7] The Parole Project Memorandum, entitled Parole Project for Asylum Seekers at Ports of Entry and in INS Detention, 57 Fed. Reg. 15,272 (Apr. 27, 1992), was written by then-Commissioner of the INS, Gene McNary, and issued on April 20, 1992. It is an intra-agency directive which enumerates criteria to be taken into account by INS personnel when determining whether to recommend parole for asylum seekers after pre-screening interviews. Id. Its aim is to conserve detention space by allowing for parole recommendations in certain cases, ensuring that detention will be based upon factors such as risk of flight or danger to the public, rather than the availability of detention space. Id.

[8] Petitioner argues, international law aside, that ICE must follow its own procedures, which include those outlined in the Parole Project Memorandum, and that the failure to parole Petitioner reflects a failure to follow those guidelines. In fact, the Parole Project Memorandum calls for flight risk to be taken into account when considering recommendation for parole, 57 Fed. Reg. 15,272 (Apr. 27, 1992), and Petitioner was denied parole explicitly because he was deemed a flight risk. (Deportation Officer Parole Recommendation, attached as Ex. F to Answer and Opp'n to Habeas Corpus Pet.) This clearly comports with the guidelines of the Parole

makes it clear that the final decision on whether or not to parole a detainee is left to the Attorney General's discretion. No reading of 8 U.S.C. § 1182(d)(5) can wrest the decision to parole from the Attorney General's discretion. As a result, 8 U.S.C. § 1182(d)(5) preempts any international law to the contrary,[9] and Petitioner's claim that his detention is a violation of international law will be denied.

## C. Petitioner's Due Process Claims

Petitioner seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241(c)(3). That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A district court has subject matter jurisdiction under 28 U.S.C. § 2241(c)(3) to grant a petition for a writ of habeas corpus where the petitioner is in custody in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2241(c)(3).

Detentions related to removal proceedings are governed by 8 U.S.C. § 1226, and are divided into two categories: (1) pre-removal-order detentions and (2) post-removal-order detentions. The beginning of the "removal period" distinguishes the categories from each other. In a post-removal order detention, the removal period starts on the latest of the following: (1) the date when the order of removal becomes administratively final, that is, when the appeal is denied by the BIA or the time to file such appeal elapses; (2) the date when a court order staying the

---

Project Memorandum.

[9] Petitioner cites the 1969 American Convention on Human Rights, 1144 U.N.T.S. 144, as well as Article 9 of the 1966 International Covenant on Civil and Political Rights, 6 I.L.M. 368, which declare that no person should be subjected to arbitrary arrest or detention. This does not conflict with 8 U.S.C. § 1182(d)(5), but even if it did, section 1182(d)(5) would control.

removal becomes final; or (3) the date when the petitioner is released from the underlying criminal confinement, if such confinement took place.  8 U.S.C. § 1231(a)(1)(B).

In the present case, the appeal of the IJ's removal order is still pending before the BIA, and, as such, Petitioner's detention falls within the category of pre-removal-order detentions.  As a result, Petitioner's application to seek review under the rubric of Zadvydas v. Davis, 533 U.S. 678 (2001), and Clark v. Martinez, 543 U.S. 371 (2005), which pertain to post-removal-order detentions, is premature.[10]

Petitioner alleges that his detention, spanning four years, violates his Fifth Amendment right to due process of law.  U.S. CONST. amend. V.  Petitioner's status as an excludable[11] alien does not completely deprive him of due process.  See Chi Thon Ngo v. INS, 192 F.3d 390, 396 (3d Cir. 1999) (citing Wong Wing v. United States, 163 U.S. 228, 238 (1896)).  However, the due process afforded to Petitioner is not equal to that of a U.S. citizen.  "An alien who is 'on the

---

[10] In Zadvydas, the Supreme Court reviewed the detention of aliens who had been admitted but subsequently ordered removed.  Pursuant to 8 U.S.C. § 1231(a)(1)(A), the government has 90 days to effectuate the removal of an alien who has been ordered removed from the country.  The Supreme Court concluded that if the government is unable to remove the alien during the initial 90 day period, detention for an additional six months, during which time the government may continue its efforts to effectuate removal, is presumptively reasonable under the Constitution.  See Zadvydas, 533 U.S. at 683.  In Clark, the Supreme Court expanded its holding in Zadvydas, holding that inadmissable aliens who have been ordered removed may not be detained indefinitely pending removal, but may be detained for a reasonable time, presumptively six months, according to the Court, so that the government may effectuate their removal.  See Clark, 543 U.S. at 378.

[11] Congress made sweeping changes to the Immigration and Naturalization Act with the Antiterrorism and Effective Death Penalty Act of 1996 and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996.  "As amended, the Immigration Act refers to 'inadmissable' aliens in the place of 'excludable' aliens. [T]here are still separate grounds of 'inadmissability' and 'deportability[;]' the distinction now turns on whether an alien has been 'admitted' to the United States, rather than on whether the alien has gained 'entry.'"  Chi Thon Ngo v. INS, 192 F.3d 390, 395 (3d Cir. 1999).

threshold of initial entry' stands on a footing different from those who have 'passed through our gates' – 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" Id. at 396 (quoting Shaughnessy v. United States ex. rel Mezei, 345 U.S. 206, 212 (1950)).

The detention of inadmissible aliens like Petitioner does not violate due process where "appropriate provisions for parole are available." Id. at 398. See also Caballero v. United States, 145 F. Supp. 2d 550, 557 (D.N.J. 2001). The "appropriate provisions" are set forth in 8 C.F.R. § 241.4,[12] which specifies that custody determinations must be provided to alien detainees, and that decisions to retain custody "shall briefly set forth the reasons for the continued detention." 8 C.F.R. § 241.4(d). These procedures prevent "rubber stamp denials of release," and, if properly applied, provide "reasonable assurance of fair consideration of [an alien's] application for parole pending removal." Ngo, 192 F.3d at 398, 399. Therefore, "when the INS abides by these . . . procedures due process is satisfied." Ford v. Quarantillo, 142 F. Supp. 2d 585, 588 (D.N.J. 2001) (citing Ngo, 192 F.3d at 399); see also Mashai v. INS, 256 F. Supp. 2d 371, 376 (E.D. Pa. 2003).

Petitioner's parole requests were reviewed and denied with written explanations. On May 12, 2004, Petitioner's parole request was denied for a failure to show significant ties to the community, and because use of a false U.S. passport did not sufficiently assure ICE he would appear for subsequent proceedings. (Letter from Christopher Shanahan, Officer In Charge,

---

[12] 8 C.F.R. § 241.4(a)(1) states that "the provisions of this section apply to the custody determinations for [a]n alien ordered removed who is inadmissable under section 212 [8 U.S.C. § 1182] of the Act."

Immigrations and Customs Enforcement, to Visuvanathan Rudrakumaran, Esq. (Aug. 25, 2004), attached as Ex. E to Answer and Opp'n to Habeas Corpus Pet.)  Petitioner's subsequent request for parole, dated February 17, 2005, was denied by DHS, which found Petitioner continued to be a flight risk because of his attempted entry with a false U.S. passport.  (Deportation Officer Parole Recommendation, attached as Ex. F to Answer and Opp'n to Habeas Corpus Pet.)  As long as Petitioner receives periodic reviews, "the prospect of indefinite detention without hope for parole will be eliminated. In these circumstances, due process will be satisfied." Ngo, 192 F.3d at 399.

Under the parole provisions, Petitioner has received due process, since he has had opportunities to be heard by the designees of the Attorney General and the Secretary of Homeland Security.

**CONCLUSION**

For the reasons set forth above, this Court finds the following: (1) the denial of Petitioner's request for parole, pursuant to 8 U.S.C. § 1182(d)(5), is a decision within the discretion of the Attorney General of the United States, which this Court lacks jurisdiction to review; (2) international law is not applicable in this case; (3) Petitioner has been afforded the due process rights of an alien denied entry, in satisfaction of the parole procedures set forth in 8 C.F.R. § 241.4.  This Court finds that Petitioner is not being held in custody in violation of the Constitution or laws and treaties of the United States, and shall deny his petition seeking the

issuance of a writ of habeas corpus, pursuant to 28 U.S.C. § 2241(c)(3).

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: April 23, 2007